15-3959-ag
Buffalo Transportation Inc. v. United States of America

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of October, two thousand sixteen.

PRESENT:  JON O. NEWMAN,
    GERARD E. LYNCH,
    CHRISTOPHER F. DRONEY,
      *Circuit Judges.*

-----------------------------------------------------------------------

BUFFALO TRANSPORTATION INC.,
    *Petitioner*,

     v.              No. 15-3959-ag

UNITED STATES OF AMERICA,
    *Respondent.*

-----------------------------------------------------------------------

| | |
|---|---|
| FOR PETITIONER: | Stephen F. Szymoniak, Law Office of Stephen F. Szymoniak, Williamsville, New York. |
| FOR RESPONDENT: | Andrew N. O'Malley, Trial Attorney, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Bernard A. Joseph, Trial Attorney, Office of Immigration Litigation, United States |

Department of Justice, Washington, D.C.

Petition for review of an amended order of October 16, 2015 of an Administrative Law Judge.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition is **DENIED.**

Petitioner Buffalo Transportation Inc., appeals from a final order of the Office of the Chief Administrative Hearing Officer for the Executive Office of Immigration Review ("OCAHO"). Buffalo Transportation contends that the Administrative Law Judge ("ALJ") erred in finding that the 54 violations for current employees' Forms I-9 were substantive, rather than technical or procedural, and that the fines imposed for the 135 total substantive violations were excessive. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review an order of the OCAHO issued pursuant to 8 U.S.C. § 1324a under the arbitrary and capricious standard. *See Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 496–97 (2004) (applying arbitrary and capricious standard when the statute itself does not specify a standard for judicial review of agency action). We review an agency's factual determinations under the substantial evidence standard, *N.Y. & Atl. Ry. Co. v. Surface Transp. Bd.*, 635 F.3d 66, 71 (2d Cir. 2011), while we review an agency's determinations on questions of law *de novo*, *see Nwozuzu v. Holder*, 726 F.3d 323, 326 (2d Cir. 2013).

I.    Substantive Violations

Section 274A(b) of the Immigration and Nationality Act requires employers to verify that their employees are legally authorized to work in the United States. 8 U.S.C. § 1324a(b). Regulations designate the Employment Eligibility Verification Form ("I-9 form") for this purpose, 8 C.F.R. § 274a.2(a)(2), and employers must prepare these forms within three days of hire, *id.* § 274a.2(b)(1)(ii). An employer must retain these forms and provide them for inspection upon three days' notice for current employees, or for one year after employment for terminated employees. *Id.* § 274a.2(b)(2)(ii). An employer may be "considered to have complied" with the I-9 requirements if there is only a "technical or procedural failure" so long as the employer made a "good faith attempt to comply." 8 U.S.C. § 1324a(b)(6)(A). To avail itself of the good faith defense, an employer must also correct the relevant violations within ten business days of receiving notice of the technical or procedural failings. *Id.* § 1324a(b)(6)(B).

2

The Immigration and Naturalization services ("INS") issued interim guidance about what constitutes a "technical or procedural violation" versus a "substantive violation." Memorandum of Paul W. Virtue, INS Office of Programs, Interim Guidelines: Section 274A(b)(6) of the INA (March 6, 1997), *available at* 74 Interpreter Releases 706, App. I (April 28, 1997) ("Virtue Memorandum"). The INS's successor agency, the Department of Homeland Security Immigration and Customs Enforcement ("ICE") has continued to follow that guidance. The OCAHO has consistently relied on this guidance to determine that failing timely to complete an I-9 form is a substantive violation. *See United States v. Anodizing Indust., Inc.*, 10 OCAHO 1184 (2013); *United States v. Platinum Builders of Cent. Fla., Inc.*, 10 OCAHO 1199 (2013).

Formal adjudications and promulgated rules are given considerable deference under the Administrative Procedure Act and *Chevron. See Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984); *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 55 (2d Cir. 2004). An informal agency interpretation that is neither a formal adjudication nor a promulgated rule may still receive deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), "'according to its persuasiveness,' as evidenced by the 'thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *Estate of Landers v. Leavitt*, 545 F.3d 98, 107 (2d Cir. 2008) *as amended* (Jan. 15, 2009) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 221, 228 (2001)) (internal citation omitted); *see also Ketchikan Drywall Servs., Inc. v. Immigration & Customs Enf't*, 725 F.3d 1103, 1112–13 (9th Cir. 2013) (applying *Skidmore* deference to the Virtue Memorandum). An agency's interpretation of its own regulation is given deference unless that interpretation is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

We apply *Auer* deference to OCAHO's interpretations of the relevant regulations regarding the timing of when I-9 forms must be prepared. We apply *Skidmore* deference to the Virtue Memorandum because we find it well-reasoned and thorough. It distinguishes between violations that effectively undermine immigration requirements (such as not filling out the form at all, or not including the employee's name) and those that create small but solvable problems (such as an omitted birth date).

The regulation clearly states that employers must have employees fill out the I-9 form, verify the employee's documentation, and have both employee and employer sign the form within three days of hire. Failure to prepare an I-9 form constitutes a substantive violation, Virtue Memorandum at 3, and "failure to prepare" necessarily means within the time allotted by the regulations—here, three days. The ALJ correctly determined that the 54 I-9s presented to ICE at the audit were substantive violations, as there is no evidence

that any of the 54 forms had been completed within three days of the employees' hiring dates. Indeed, it appears that Buffalo Transportation only prepared the 54 I-9 forms for its current employees in response to ICE's notice of inspection.

Buffalo Transportation contends that it should have been given a Warning Notice pursuant to 8 C.F.R. § 274a.9(c) before receiving the ICE Notice of Intent to Fine. The government contends that this argument is unexhausted. Assuming *arguendo* that Buffalo Transportation properly raised the warning notice claim, it is without merit. The regulation permits ICE or the Department of Labor "in their discretion" to give a warning of violations. *Id.* It does not require ICE to do so. Asking for a Warning Notice is tantamount to asking to not be prosecuted for the violations, and decisions to prosecute are generally "committed to agency discretion." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (internal quotation marks omitted); s*ee also Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 760 F.3d 151, 171 (2d Cir. 2014).

Buffalo Transportation also argues that it substantially complied with the employee verification requirements by keeping each employee's identifying documents on file. That argument is unavailing, however, because the relevant regulations explicitly defeat it: "[C]opying . . . of [underlying documents] and retention of the copy or electronic image does not relieve the employer from the requirement to fully complete section 2 of the Form I-9." 8 C.F.R. § 274a.2(b)(3); *see Ketchikan*, 725 F.3d at 1111 (rejecting the same argument).

II.    Fines

Buffalo Transportation also challenges the amount of the fines imposed by the ALJ as arbitrary. ICE imposed a fine of $794.75 per violation, which it calculated using the regulatory scheme at 8 C.F.R. § 274a.10(b)(2) and its own internal guidelines, which ICE uses to set the base penalty and adjust the fine for aggravating and mitigating circumstances. *See* ICE, Fact Sheet: I-9 Inspection Overview, *available at* https://www.ice.gov/factsheets/i9-inspection (last visited Oct. 11, 2016). The ALJ considered that Buffalo Transportation was a small business, did not act in bad faith, lacked a history of violations, and that there was no evidence that Buffalo Transportation had hired unauthorized workers as mitigating factors. The ALJ also considered Buffalo Transportation's financial situation. In light of this evidence, Buffalo Transportation's arguments, and the statutory and non-statutory factors—including Buffalo Transportation's ability to pay —the ALJ reduced the fines to $600 per violation for past employees and $500 per violation for current employees.

When reviewing agency fines our inquiry is limited to whether the agency made "an allowable judgment in [its] choice of the remedy." *United States v. Int'l Bhd. of Teamsters*, 170 F.3d 136, 143 (2d Cir. 1999) (internal quotation marks omitted). We conclude that the ALJ made such an allowable judgment here in determining the amount of the fines after properly assessing the various factors, including the seriousness and number of the violations.

Buffalo Transportation next argues that because the regulation provides a broad range of allowable fines (from $110 to $1,100) and the Virtue Memorandum provides no specific guidance, the ALJ impermissibly made, and was empowered to make, an arbitrary determination as to the amounts of the fines. Buffalo Transportation also contends that other businesses received larger reductions from ICE-imposed fines than it did. We do not find these arguments convincing. The ALJ provided well-reasoned bases for the fine amounts, based on Buffalo Transportation's specific circumstances.

\* \* \*

We have considered Buffalo Transportation's remaining arguments and find them to be without merit. Accordingly, we **DENY** the petition for review.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

5